IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HENRY DARNELL TALLEY #45022,<br><br>Petitioner,<br><br>v.<br><br>WARDEN BERT BOYD,<br><br>Respondent | NO. 3:20-00303<br><br>JUDGE CAMPBELL |

## MEMORANDUM

Petitioner is a state inmate serving an effective sentence of 33 years in prison for several convictions in connection with his publicly shooting the mother of his child: attempted first degree murder, reckless aggravated assault, reckless endangerment, being a felon in possession of a weapon, using a weapon during commission of a dangerous felony, and violation of a protective order. He filed a pro se Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus ("Petition") and paid the filing fee. (Doc. Nos. 1, 8). The Court will deny his Petition for the reasons set forth below.

### I. FACTS AND PROCEDURAL HISTORY

According to the state's proffer at Petitioner's plea hearing, the state would have proved at trial that Ronkeisha Briley, the mother of Petitioner's child, had an order of protection banning Petitioner from contacting her or coming to her work place, which had been in effect since July 2013. (Doc. No. 15-2). On September 4, 2014, Petitioner nevertheless drove to Briley's place of work, a Value Vision Eyewear store in Rivergate, armed with a .45 caliber pistol. (*Id.*) Petitioner's possession of that pistol was illegal due to his previous felony convictions for manslaughter and being a felon in possession of a weapon. (*Id.*) "He walked into the store that day with the gun

1

tucked in his waistband intending to kill Ronkeisha Briley who was working her shift." (*Id.* at 8). After a brief exchange with Briley, Petitioner accused her of being disrespectful then "pulled the gun from his waistband and shot her at point blank range as she stood at the counter." (*Id.*) A co-worker standing nearby, Brittany Barbee, started screaming, pulled Briley off the floor, and ran with her down a hallway into an exam room, where they crouched under a table. (*Id.*) Petitioner followed them and continued to shoot as he stood over them, shooting Briley three more times and grazing Barbee's leg with a bullet, until his gun jammed. (*Id.* at 8–9).

Petitioner then walked out of the store, got into the maroon Pontiac in which he had arrived, drove "donuts" around the parking lot, then drove some distance down Gallatin Road before stopping the car and shooting himself in the chin while officers responding to 911 calls about the incident watched. (*Id.* at 9–10). Petitioner was injured but was able to follow the officers' instructions to get out of the car with his hands up. (*Id.* at 10). Officers took Petitioner into custody and retrieved the gun from the floorboard of the car. (*Id.*) Ballistics examination confirmed the bullets fired in the Value Vision store were fired by that gun. (*Id.*)

Before she lost consciousness from internal bleeding on the way to Vanderbilt Trauma Center, Briley told responding officers that her child's father had shot her, and co-workers and customers in the store provided descriptions of Petitioner and his car. (*Id.* at 9). Briley's injuries required four surgeries and caused "lasting health issues." (*Id.* at 11).

Approximately a month after the shooting, the trial court found Petitioner incompetent to stand trial and ordered him hospitalized at Middle Tennessee Mental Health Institute. (Doc. No. 15-1 at 19–21). The court ordered additional forensic evaluation of Petitioner one year later, after

which his prosecution proceeded.[1] (*Id*. at 26 et seq.). On June 6, 2016, Petitioner pleaded guilty pursuant to an agreement with the state that provided a sentencing range of 18 to 23 years for the attempted first degree murder, with the exact sentence to be determined by the court at a sentencing hearing. (Doc. No. 15-1 at 55). The agreement also provided for a 10-year sentence for employing a firearm during a dangerous felony, to be served consecutively to the sentence for attempted murder. (*Id.*) The sentences for reckless aggravated assault, reckless endangerment and felon in possession, and violation of order of protection were set at 4 years, 2 years, and 11 months 29 days, respectively, all to run concurrently with the attempted murder sentence. (*Id.*) The effective agreed-upon sentence was thus 10 years plus whatever sentence the court imposed for the attempted first degree murder. Following a sentencing hearing on July 8, 2016, the trial court sentenced Petitioner to 23 years—the maximum sentence in the agreed-upon range—for the attempted first degree murder count (Doc. No. 15-1 at 63), resulting in a total effective sentence of 33 years.

Petitioner appealed, asserting that the 23-year sentence for attempted murder was excessive. The Tennessee Court of Criminal Appeals affirmed, and the Tennessee Supreme Court denied discretionary review. (Doc. Nos. 15-7, 15-10). Petitioner later filed a pro se petition for post-conviction relief in state court. (Doc. No. 15-11). After appointed counsel filed an amended petition, the court held an evidentiary hearing and denied relief. (*Id.* at 71–112). The Tennessee Court of Criminal Appeals again affirmed, and the Tennessee Supreme Court again denied review. (Doc. Nos. 15-17, 15-20).

---

[1] The results of the 2015 evaluation are not in the record and were not included in the Tennessee Court of Criminal Appeals's procedural summary on direct appeal (*see* Doc. No. 15-7 at 2), but Petitioner acknowledges that his competence was "verif[ied]" in a mental health facility approximately a month before his plea negotiations took place. (Doc. No. 1 at 18).

Petitioner now seeks relief from this Court, and Respondent does not dispute that his Petition is timely and properly before the Court. (Doc. No. 16 at 2).

## II. ISSUES PRESENTED FOR REVIEW

The Petition asserts two claims for relief:

1. Plea counsel was ineffective for providing inaccurate advice that led Petitioner to enter a plea he did not understand. (Doc. No. 1 at 7). And
2. Plea counsel was ineffective for failing to move to withdraw Petitioner's plea upon request. (*Id.* at 8).

## III. STANDARD OF REVIEW

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence" on the outcome of the case. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme

malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)(2). A state court's legal decision is "contrary to" clearly established federal law under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412–13. An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision is not unreasonable under this standard simply because the federal court finds it erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410–12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under Section 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in

5

the state court proceedings.'" *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting § 2254(d)(2) and (e)(1)); *but see McMullan v. Booker*, 761 F.3d 662, 670 and n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read *Matthews* to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under Section 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

Thus the standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Petitioner carries the burden of proof. *Pinholster*, 563 U.S. at 181.

The demanding review of claims rejected on the merits in state court, however, is ordinarily only available to petitioners who "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). "To be

6

properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted).

The procedural default doctrine is "an important 'corollary' to the exhaustion requirement," under which "a federal court may not review federal claims that . . . the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citations omitted). A claim also may be "technically exhausted, yet procedurally defaulted," where "a petitioner fails to present a claim in state court, but that remedy is no longer available to him." *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)).

To obtain review of a procedurally defaulted claim, a petitioner must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014)). Cause may be established by "show[ing] that some objective factor external to the defense"—a factor that "cannot be fairly attributed to" the petitioner—"impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). To establish prejudice, "a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (quoting *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991)) (internal quotation marks omitted). And the manifest-miscarriage-of-justice exception applies "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## IV. ANALYSIS AND DISCUSSION

**A. Standard for Ineffective Assistance Claims**

All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair proceeding. *Id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688, 689. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the . . . proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* To establish prejudice in the context of a guilty plea, a petitioner who pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The Supreme Court has further explained the *Strickland* prejudice requirement as follows:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the

8

> rarest case." The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal citations omitted). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

As discussed above, however, a federal court may not grant habeas relief on a claim that has been rejected on the merits by a state court, unless the petitioner shows that the state court's decision "was contrary to" law clearly established by the United States Supreme Court, or that it "involved an unreasonable application of" such law, or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(1) and (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted).

9

## B. Claim 1 — Advice Prior to Plea

Petitioner asserts that "[t]rial counsel provided ineffective assistance of counsel when he gave . . . inaccurate advise [sic] which lead [sic] petitioner to plea guilty to a sentence he did not understand." (Doc. No. 1 at 7). Specifically, Petitioner alleges that counsel did not accurately advise him about sentencing issues and did not explain to him that the attempted murder charge to which he was pleading guilty included the element of premeditation, which Petitioner says did not exist in his case. (*Id.* at 18–19).

Petitioner alleged in both his pro se post-conviction petition and the amended petition filed by counsel that his trial counsel gave him inaccurate advice about the agreed-upon sentence as compared to his sentencing exposure at trial. (Doc. No. 15-11 at 52, 83). The trial court denied relief on that claim:

> The Petitioner also avers that Mr. Griffith was ineffective in his representation because in his discussions regarding the Petitioner's potential exposure should the case proceed to trial, he always discussed the Petitioner receiving multiple consecutive sentences. The Court does not find the Petitioner is entitled to relief on this ground. First, the Court accredits Mr. Griffith's testimony that he and the Petitioner discussed at length the various possible sentences the Petitioner could have received, including the minimum possible sentence. Further, the Court accredits Mr. Griffith's testimony that he did advise the Petitioner that Count 2 would mandatorily be run consecutive to his other sentences, and that he expected the Court would run his conviction for either Count 3 or Count 5 consecutively as well. Though no trial counsel is able to know with certainty what a trial court may do in terms of discretionary sentencing, the Court is of the opinion that it is well within the bounds of competency to try to provide a client with guidance as to what discretionary factors might be applied to determine a total effective sentence length. The Court finds that Mr. Griffith did just that and effectively tried to advise his client of numerous possible outcomes, including the [sic] what he told his client was the most likely realistic outcome. Thus, the Court does not find that Mr. Griffith's representation was deficient in this regard, and the Petitioner is not entitled to relief on this ground.

(*Id.* at 109). Petitioner did not assert any error in that ruling in his appeal from the denial of post-conviction relief. (Doc. No. 15-14 at 8).

Because Petitioner did not fully and fairly present this claims to every available level of the state court system and is now precluded from doing so by state procedural rules,[2] the claim is deemed exhausted (since there is no "available" state remedy) but procedurally defaulted from federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991); *Atkins v. Holloway*, 792 F.3d 643, 657 (6th Cir. 2015). As explained above, therefore, this claim is only subject to federal habeas review if Petitioner establishes cause for and prejudice arising from the default.[3]

When a petitioner defaults a claim of ineffective assistance of trial counsel, the ineffectiveness of post-conviction counsel can sometimes establish cause "to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). But ineffective assistance of post-conviction counsel can act as cause only when it occurs at the initial review stage, not the appeal stage, 792 F.3d at 661 (quoting *West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015)) ("[A]ttorney error at state post-conviction appellate proceedings cannot excuse procedural default."). Petitioner offers no cause to excuse the default of this claim on post-conviction appeal, and none is apparent from the record. This claim is, therefore, barred from federal habeas review.

Petitioner did not raise, at any point in his post-conviction action, a claim about the alleged failure to advise him of the premeditation element of the murder charge to which he was pleading guilty. Accordingly, this claim is also procedurally defaulted, but it is subject to a determination of whether its default at the initial post-conviction review stage might be excused pursuant to

---

[2] Any effort by Petitioner to raise these claims in state court now would be untimely and precluded by Tennessee's "one-petition" limitation on post-conviction relief. Tenn. R. App. P. 4; Tenn. Code Ann. §§ 40-30-102(a), (c).

[3] Petitioner's agreement to the facts summarized above at his plea hearing forecloses any claim that he is actually innocent of the offenses for which he was convicted.

11

*Martinez*. To determine whether Petitioner demonstrates cause under *Martinez*, the Court considers "(1) whether state post-conviction counsel was ineffective; and (2) whether [Petitioner's] claims of ineffective assistance of counsel were 'substantial.'" *Atkins*, 792 F.3d at 660 (citations omitted). For the purposes of *Martinez*, "[a] substantial claim is one that has some merit and is debatable among jurists of reason." *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015) (citing *Martinez*, 566 U.S. at 14). On the other hand, a claim is not substantial "when 'it does not have any merit,'" or when it "'is wholly without factual support.'" *Porter v. Genovese*, 676 F. App'x 428, 432 (6th Cir. 2017) (quoting *Martinez*, 566 U.S. at 15–16). If Petitioner demonstrates cause, then the Court must consider "whether [he] can demonstrate prejudice." *Id.* And if Petitioner establishes both "cause" and "prejudice," only then would the Court "evaluate [his] claims on the merits." *Id.* (citations omitted).

In this instance, Petitioner's claim is defeated by the facts in the record and thus lacks even the modicum of merit to warrant further consideration under *Martinez*. It is apparent from the record that counsel **did** advise Petitioner prior to entry of his plea about the premeditation element of the charge against him. As Respondent observes, Petitioner acknowledged as much in his pro se post-conviction petition when he alleged that counsel had advised him that "there was no disproving premeditation and to plea out to the first degree." (Doc. No. 16 at 13; Doc. No. 15-11 at 52). Petitioner's new claim to the contrary, therefore, is without merit and insubstantial for *Martinez* purposes.

Petitioner's claims that counsel was ineffective in advising Petitioner prior to entry of his plea are thus procedurally defaulted and barred from further review.

### C. Claim 2 — Failure to Move to Withdraw Plea

Petitioner claims that he informed counsel shortly after he entered his guilty plea that he

12

wanted to withdraw the plea and go to trial, and that counsel was ineffective for failing to withdraw the plea. (Doc. No. 1 at 8, 16–18). Petitioner exhausted this claim in his post-conviction proceedings. The Tennessee Court of Criminal Appeals accurately identified and summarized the *Strickland* and *Hill* standards applicable to Petitioner's claim. (Doc. No. 15-17 at 10–12). Then it affirmed denial of relief on this claim on the merits:

> Rule of Criminal Procedure 32(f) affords a defendant two opportunities to seek withdrawal of a guilty plea: 1) before sentence is imposed and 2) after sentencing but before the judgment becomes final. A judgment of conviction becomes final thirty days after entry, and the trial court then loses jurisdiction. *State v. Pendergrass*, 938 S.W.2d 834, 837 (Tenn. 1996). Withdrawal of a guilty plea is permitted prior to sentencing for "any fair and just reason," but after sentencing, withdrawal is available only "to correct manifest injustice." Tenn. R. Crim. P. 32(f)(1)-(2).
>
> The Petitioner contends that Counsel was ineffective by failing to act on the Petitioner's request to withdraw his guilty plea. He claims that he "unequivocally" communicated his request with Counsel and that Counsel led him to believe he should wait until after sentencing to withdraw his plea. The Petitioner further argues that Counsel was ineffective for neglecting to tell the Petitioner of the increased burden of withdrawal after the sentencing phase. The State responds that the Petitioner has failed to prove his claims and cannot overcome his burden of proving prejudice. We agree with the State.
>
> The post-conviction court accredited Counsel's version of the events that the Petitioner ultimately communicated to Counsel that he wished to go forward with sentencing following the entry of his guilty plea. The evidence does not preponderate against this finding. Counsel testified that he met with the Petitioner several times after learning of the Petitioner's wish to withdraw his plea; during those meetings, as well as prior to the entry of his plea, Counsel went over with the Petitioner all of the potential outcomes of a trial. After each meeting, Counsel left with the impression that the
>
> Petitioner wished to go forward with sentencing. Counsel testified that he would have requested to withdraw the Petitioner's plea had he believed that to be the Petitioner's ultimate wish. The Petitioner agreed that he never raised his desire to withdraw his plea during the sentencing hearing. The post-conviction court did not accredit the Petitioner's testimony that he was told by Counsel that the plea would be withdrawn after sentencing. As such, the Petitioner has not shown that he received the ineffective assistance of counsel because of Counsel's failure to request withdrawal of his guilty plea. The postconviction court stated that the Petitioner had failed to provide a fair and just reason to withdraw his plea. The Petitioner, therefore, has failed to show that, but for Counsel's inaction, the trial court would have granted his request to withdraw his plea.

13

> As to the Petitioner's argument that Counsel failed to inform him of the ramifications of waiting until after sentencing to seek withdrawal of his plea, the evidence does not preponderate against the post-conviction court's finding that Counsel made a strategic decision not to pursue the withdrawal of the guilty plea based on his discussions with the Petitioner. The evidence was that Counsel's multiple discussions with the Petitioner dealt with the Petitioner's sentencing exposure if he withdrew his guilty plea and went to trial. Counsel's strategy included a decision not to explain the further difficulties involved of withdrawing his plea after the sentencing hearing, which we will not second guess. Accordingly, the Petitioner is not entitled to relief.

(*Id.* at 12–13).

Petitioner asserts that the ruling in state court was based on "a clearly erroneous assessment of proof" and "an unreasonable determination of the facts." (Doc. No. 1 at 16). But he does not explain why it was unreasonable for the state courts to credit counsel's testimony. The transcript of the post-conviction hearing confirms that counsel testified that he had at least two meetings with Petitioner at the jail to discuss Petitioner's request to withdraw his guilty plea, and that by the end of each of those meetings, it appeared that Petitioner wanted to go forward with his sentencing pursuant to the plea agreement. (Doc. No. 15-12 at 16–18, 39, 42–43). Counsel testified that Petitioner did not tell him on the day of his sentencing hearing that he wanted to withdraw his plea. (*Id.* at 43).

Witness credibility assessments are "predominately the business of trial courts," and "federal habeas courts do not have license, under § 2254(d), to redetermine witness credibility, whose demeanor is observed exclusively by the state court." *Givens v. Yukins*, 238 F.3d 420 (6th Cir. 2000) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the Court finds that the state court's resolution of this claim is supported by the record and that there is no basis to find that it was unreasonable. Petitioner is not entitled to relief on this claim.

14

## V. CONCLUSION

Petitioner's habeas claims fail on their merits or are foreclosed from habeas review for the reasons set forth above. Accordingly, the Court will deny the requested relief and dismiss the Petition.

An appropriate Order will enter.

                                                                               WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE